UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY McGEE,<br><br>            Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>            Defendant. | Case No. CV 08-5628 PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI") benefits. Plaintiff claims that the ALJ erred in 1) finding that his mental impairment did not meet or equal a Listed impairment; 2) failing to properly evaluate his credibility; and 3) determining his residual functional capacity. (Joint Stip. at 2.) Because the Agency's decision that Plaintiff was not disabled is not supported by substantial evidence, it is reversed and the case is remanded for further proceedings.

## II. BACKGROUND

Plaintiff applied for SSI on August 31, 2005. (Administrative Record ("AR") 41.) He claimed that he was disabled due to dyslexia, hip/ankle replacements, and "mental/illiterate." (AR 133.) The Agency denied the applications initially and on reconsideration. (AR 43, 49, 50.) Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ"). (AR 32, 42.) On October 22, 2007, Plaintiff appeared with counsel and testified at the hearing. (AR 239-67.) On November 2, 2007, the ALJ issued a decision denying the application. (AR 14-23.) The ALJ determined that Plaintiff could perform sedentary work with some limitations. (AR 19, 23.) Plaintiff appealed the ALJ's decision, submitting school records showing that he had been in special education classes in middle school, but the Appeals Council denied his request for review. (AR 5-7.) Thereafter, he commenced this action.

## III. ANALYSIS

A. <u>Listing 12.05</u>

In his first claim of error, Plaintiff contends that the ALJ erred by failing to find that he meets or equals Listing 12.05, "Mental Retardation," based on the results of IQ tests administered by consulting psychologist Michael Musacco.[1] (Joint Stip. at 2-5.) The

---

[1] Listing 12.05 provides, "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Plaintiff contends that he meets the requirements of subsections (B) and (C) of the Listing. (Joint Stip. at 3.) Subsection 12.05(B) requires a showing of "[a] valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(B). Subsection 12.05(C) is satisfied if there

ALJ dismissed these results because he found that Dr. Musacco found that Plaintiff was malingering and, therefore, the test results were invalid. Plaintiff argues that Dr. Musacco's findings that Plaintiff was malingering were equivocal at best, noting that the doctor opined, on the one hand, that Plaintiff might not have given his best effort during the testing and, on the other hand, that he suffers from a "genuine impairment in his functioning." (Joint Stip. at 3.) Plaintiff also points out that Dr. Musacco recommended that other records be obtained to confirm or rule out his suspicion that Plaintiff was malingering and argues that the ALJ's failure to obtain these records amounted to error. (Joint Stip. at 3-4.) For the following reasons, the Court finds that further development of the record is warranted on this issue.

When Dr. Musacco evaluated Plaintiff in March 2006, Plaintiff reported that he was illiterate and suffered from depression. (AR 210.) Plaintiff told Dr. Musacco that he had attended a school for emotionally and behaviorally disturbed children, had dropped out of school in the ninth grade, and was suspended "all the time." (AR 211.) He denied any history of mental health treatment. Plaintiff conceded that he used marijuana daily and contended that he did so to cope with pain from injuries he sustained in a motorcycle accident years earlier. (AR 211.)

Plaintiff claimed during his examination that he was unable to correctly identify the date, month, or year, or the colors of the

---

is "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C).

American flag, but could name the President. (AR 211-12.) Dr. Musacco and his assistant then administered a number of tests in an effort to determine Plaintiff's cognitive functioning. One of the tests was the Rey 15-item Memory Test, which is designed to screen out malingerers. Plaintiff failed the test on two tries, which Dr. Musacco interpreted as "support[ing] a concern for malingering or intentional poor effort." (AR 212.) Plaintiff was also given a Trails B test, the results of which suggested gross deficits in cognitive functioning. (AR 213.) Here, again, however, Dr. Musacco noted that "concerns for malingering prevent[] me from determining whether these test results are valid." (AR 213.) Plaintiff was given an IQ test and scored 54 on the verbal portion, 65 on the performance portion, and 55 on the full scale portion. (AR 213.) Dr. Musacco once again opined that "these test results should be interpreted with caution as I am uncertain whether [Plaintiff] performed to the best of his ability." (AR 213.) Similarly, Dr. Musacco concluded that Plaintiff's scores on the Wechsler Memory Scale "fell in the significantly impaired range[,] revealing pervasive deficits in his memory skills," but he was uncertain whether the test results were valid. (AR 214.) Ultimately, Dr. Musacco diagnosed Rule Out Malingering, Cannabis Dependence, and Depressive Disorder, not otherwise specified. (AR 214.) He also diagnosed Mild Mental Retardation versus Borderline Intellectual Functioning, stating that "the current test results underestimate[] [Plaintiff]'s functioning, although it is possible that he still suffers from a significant or borderline impairment in his intellectual functioning." (AR 214.) He concluded that Plaintiff's daily activities and social functioning were "significantly impaired," but stated that he was "not able to

offer a strong opinion regarding" his mental capacity.  (AR 215.)  Dr. Musacco noted that, "[d]ue to validity concerns, I would likely recommend that collateral records be obtained (if possible) in order to confirm or rule out the diagnostic conclusions reached in my evaluation."  (AR 215.)

Based on Dr. Musacco's diagnoses, the ALJ found that Plaintiff's "borderline intellectual functioning" was a severe impairment but did not meet or equal a Listed impairment.  (AR 19, 21.)  He found that Plaintiff's test results were invalid and that "[n]o work-related psychological impairments were suggested," in Dr. Musacco's report.  (AR 21.)  The ALJ noted that Dr. Musacco failed to assess functional impairments corresponding to his diagnoses, so the ALJ determined on his own that Plaintiff's borderline intellectual functioning caused "mild to moderate impairments in capacities to understand and remember instructions, sustain concentration and persistence, socially interact with the general public, and adapt to workplace changes."  (AR 19.)

Plaintiff argues that the ALJ erred by failing to note the IQ scores derived from Dr. Musacco's testing and analyze them under Listing 12.05.  (Joint Stip. at 3.)  The Agency counters that, because the ALJ found that the scores were invalid, he was not required to discuss the test scores or the Listing requirements in any detail. *See*, *e.g.*, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990) (holding that the Agency's failure to discuss why claimant did not satisfy the Listed impairments did not compel reversal where it set forth an "adequate statement of the foundations on which the ultimate factual conclusions are based.").  For the reasons explained below, the Court finds that the ALJ erred in not further developing

the record relating to whether Plaintiff was malingering during Dr. Musacco's testing and remand is warranted on this issue.

An ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even when the claimant is represented by counsel. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (citation omitted). That duty is further heightened where the claimant may have a mental impairment. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

The findings contained in Dr. Musacco's report were ambiguous. This is particularly true with regard to his finding regarding Plaintiff's suspected malingering. Dr. Musacco noted his suspicion that Plaintiff was malingering and recommended that the record be developed further to resolve his concerns. For example, he pointed out:

1. "While it appears that [Plaintiff] suffers from a legitimate impairment in his functioning, it also appears that he was not fully cooperative with the testing procedures." (AR 210.)

2. "[Plaintiff] did not appear to be cooperative insofar as he failed the malingering screening test and appeared to perform at a level beneath his abilities. An example of the claimant's failure to provide basic information is exemplified by his inability (or refusal) to correctly identify the colors in the American flag." (AR 212.)

1   3. "[Plaintiff] failed this brief [Rey 15-Item] malingering
2     test. . . .  These test results support a concern for
3     malingering or intentional poor effort."  (AR 212.)
4   4. "These [Trailsmaking] test results suggest gross deficits in
5     [Plaintiff's] cognitive functioning, although the concerns
6     for malingering prevent[] me from determining whether these
7     test results are valid."  (AR 213.)
8   5. "[T]hese [IQ] test results should be interpreted with
9     caution as I am uncertain whether [Plaintiff] performed to
10     the best of his ability."  (AR 213.)
11  Dr. Musacco explained his findings as follows:
12    I offered the Rule Out diagnosis of Malingering to account
13    for [Plaintiff's] performance on the malingering screening
14    test and other psychological test administered in the
15    current evaluation.  At times, it did not appear that
16    [Plaintiff] was providing a genuine effort.  His failure to
17    pass the malingering screening test (which was administered
18    twice) is not believable.  However, I also suspect that
19    [Plaintiff] suffers from a genuine impairment in his
20    functioning as noted by the other diagnostic
21    recommendations.
22    . . .
23    [Plaintiff's] daily activities and social functioning are
24    significantly impaired.  He does not engage in productive
25    activities.  It appears [Plaintiff's] primary limitations
26    revolve around his medical problems.
27    . . .
28

> 1  I am not able to offer a stronger opinion regarding
> 2  [Plaintiff's] mental capacity as I suspect that [he] did not
> 3  perform to the best of his ability during the current
> 4  evaluation.
> 5  . . .
> 6  Due to validity concerns, I would likely recommend that
> 7  collateral records be obtained (if possible), in order to
> 8  confirm or rule out the diagnostic conclusions reached in my
> 9  evaluation. It should be noted that [Plaintiff] was
> 10 repeatedly instructed to perform to the best of his ability,
> 11 although it does not appear that this occurred.

(AR 214-15.)

Thus, Dr. Musacco did not determine that Plaintiff was malingering and that the test results were invalid. Nor, on the other hand, did he determine that Plaintiff was not malingering and that the test results were valid. He strongly suspected that Plaintiff was malingering and recommended that the record be developed to confirm his suspicions. But the ALJ did not develop the record. Instead, he merely concluded that Plaintiff was malingering and that the test scores were invalid. (AR 21.) This was in error. The ALJ was not entitled to determine that Plaintiff was malingering based on Dr. Musacco's suspicions that he was where, as here, the evidence was ambiguous and even Dr. Musacco did not reach that conclusion. *See Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) (holding that ALJ failed to properly develop record where he "never sought additional evidence to fill [a] perceived gap"); *see also Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ erred in developing

"evidentiary basis by not fully accounting for the context of materials" and all parts of reports).

On remand, the ALJ should obtain a definitive answer to the question of whether Plaintiff was malingering on the IQ tests and then proceed accordingly.  If Dr. Musacco is willing to state that Plaintiff was malingering and the test results are invalid, then the ALJ need not consider them (though it would be helpful if he listed the results and explained that they are not being considered because they are not valid).  If, on the other hand, Dr. Musacco is unwilling or unable to definitively state that Plaintiff was malingering and the test scores are invalid, then the ALJ will be required to either consider them or send Plaintiff back to Dr. Musacco or to another doctor to conduct similar IQ and malingering testing.[2]

B.  The Credibility Determination

The ALJ determined that Plaintiff was not credible because: 1) his treatment was not consistent with his complaints of disabling pain and mental impairment, 2) his failure to work during the previous 15 years suggested that his testimony was tainted by a desire to obtain benefits in lieu of working, and 3) his claims of illiteracy were undercut by Dr. Musacco's finding of malingering and by the fact that Plaintiff had completed the eighth grade and had stated in his

---

[2] The Court has not overlooked the significance of the fact that Dr. Musacco administered the Rey 15-Item Memory Test and determined that Plaintiff "failed this brief malingering screening inventory." (AR 212.)  It seems reasonable to conclude, based on this finding, that Plaintiff was malingering throughout the testing with Dr. Musacco.  But Dr. Musacco deliberately, it seems, failed to reach this conclusion and, instead, left the question open.  (AR 212-15.)  The ALJ was not authorized to find that Plaintiff was malingering when the doctor who administered the tests himself refused to make that finding.

1  application that he could read and write.  (AR 21-22.)  Plaintiff
2  contends that this finding was in error.  (Joint Stip. at 10-12.)  For
3  the following reasons, the Court agrees.
4      ALJ's are tasked with judging the credibility of witnesses.  In
5  making a credibility determination, an ALJ may take into account
6  ordinary credibility evaluation techniques.  *Smolen*, 80 F.3d at 1284.
7  When a claimant has produced objective medical evidence of an
8  impairment which could reasonably be expected to produce the symptoms
9  alleged and there is no evidence of malingering, the ALJ can only
10 reject the claimant's testimony for specific, clear, and convincing
11 reasons.  *Id*. at 1283-84.  In making a credibility determination, the
12 ALJ may take into account, among other things, ordinary credibility
13 evaluation techniques and the claimant's daily activities.  *Id.* at
14 1284.[3]
15     The first reason provided by the ALJ to discount Plaintiff's
16 testimony was the fact that, in the ALJ's view, Plaintiff's complaints
17 of disabling pain were not consistent with the treatment that he had
18 received to address that pain.  (AR 21.)  The ALJ relied on a
19 treatment record from January 6, 2007, to find that Plaintiff "takes
20 no prescription medications, including no prescription pain
21 medications[.]"  (AR 20, 229.)  Though this can be a legitimate reason
22 for discounting a claimant's subjective symptom testimony, *see*, *e.g.*,
23 *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

---

25    [3] The ALJ did not rely on Dr. Musacco's ambiguous findings
26 regarding malingering in establishing the framework in which to
   address the credibility issue.  For that reason, the Court reviews the
27 ALJ's finding under the general standard of review set forth in
   *Smolen*, i.e., that there must be specific, clear, and convincing
28 reasons supporting the credibility finding.

1  2008) (noting that "a conservative course of treatment can undermine
2  allegations of debilitating pain"), the overall record does not
3  support the ALJ's finding.  Other treatment notes show that Plaintiff
4  often complained of pain and received prescriptions for narcotic pain
5  relievers in response.  For example, in August 2001, Plaintiff
6  complained to his doctor that the Tylenol No. 3 and Motrin that he had
7  been prescribed did not relieve his pain and he requested stronger
8  medication, which he got.  (AR 194.)  From at least 2002 through 2007,
9  he complained repeatedly of chronic hip and leg pain, and was
10 prescribed Vicodin, Naproxen or Naprosyn, and Flexeril.[4]  (AR 196,
11 197, 198, 203, 204, 205, 229, 231.)  The record also shows that a
12 referral for physical therapy was denied in July 2001 on the ground
13 that Plaintiff had too many chronic problems.  (AR 193.)
14      The ALJ's reliance on the single entry from January 2007 to find
15 that Plaintiff did not take prescription pain medication and,
16 therefore, was not in as much pain as he claimed was an impermissibly
17 selective interpretation of the record and cannot serve as substantial
18 evidence to support his credibility determination.  *See Robbins v.*
19 *Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) ("[A] reviewing
20 court must consider the entire record as a whole and may not affirm
21 simply by isolating a specific quantum of supporting evidence.")

---

26      [4]  Vicodin is used to relieve "moderate to severe pain," *at*
www.drugs.com/vicodin.html.  Naproxen is used "for the management of
27 mild to moderate pain, fever, and inflammation," *at*
www.medicinenet.com/naproxen/article.htm.  Flexeril is a prescription
28 muscle relaxant, *at* www.drugs.com/pdr/flexeril.html.

(quotation omitted). On remand, the ALJ should address the totality of Plaintiff's treatment and determine if it supports his claims.[5]

The ALJ also relied on the lack of mental health treatment for finding that Plaintiff's claim of a mental impairment was exaggerated. (AR 21.) The Court does not agree that this is a legitimate basis for finding that Plaintiff was not credible. This is not a case where the claimant was alleging that he suffered from anxiety, depression, or insomnia, conditions which a mental health care professional could, presumably, address with therapy, medication, and treatment. Plaintiff's alleged impairment is a cognitive deficit. He claims that his IQ is well below normal and he is unable to work as a result. The ALJ did not explain what mental health treatment Plaintiff should have obtained to correct this deficit. Nor is the Court aware of any mental health treatment programs that can help a person overcome this alleged condition. Perhaps, Plaintiff could have enrolled in special education classes to improve his reading and writing ability so that he could maintain a job, or vocational classes to learn job skills. But the Court would not consider these types of classes mental health treatment in the traditional sense. Absent any explanation as to what treatment Plaintiff was supposed to pursue to overcome his alleged learning disability, the Court rejects this reason for questioning Plaintiff's credibility.

The ALJ also found that Plaintiff was not believable because he had not worked in 15 years, which suggested to the ALJ that he was pursuing disability for financial reasons. (AR 22.) Though the ALJ

---

[5] The Court notes also that the ALJ did not consider Plaintiff's statement to Dr. Musacco that he regularly used marijuana to "deal with his physical pain." (AR 211.) On remand, the ALJ should do so.

was entitled to take into account Plaintiff's poor work history in assessing his credibility, *see, e.g.*, *Smolen*, 80 F.3d at 1284, he failed to address Plaintiff's and his wife's testimony that he had attempted to get work "a bunch of times" through an agency but was repeatedly let go because he could not read and write. (AR 243, 244, 258.) This explanation--assuming it was believed--provided some basis for Plaintiff's lack of work and should have been discussed by the ALJ when he found that Plaintiff was not credible because he had not worked in 15 years.

Finally, the ALJ rejected Plaintiff's testimony because he had been malingering during psychological testing, had completed the eighth grade, and had stated in his disability application that he could read English and write more than his own name. (AR 22.) As discussed above, the evidence of Plaintiff's malingering is inconclusive. And, though when the ALJ made his decision it was not clear what type of school Plaintiff had attended, (AR 133, 138, 211, 243), thereafter, Plaintiff submitted his school transcripts, which showed that he had been enrolled in special education classes in 7th, 8th, and 9th grades and that he did not do very well in school, earning mostly Cs and Ds. (AR 233-34.) As to Plaintiff's concession in the application that he could write more than his name and could read in English, the Court is not convinced that this establishes mental functioning beyond Plaintiff's claimed abilities. On remand, the ALJ should reconsider all three reasons for rejecting Plaintiff's credibility.

C.  The Residual Functional Capacity Determination

In his third claim of error, Plaintiff contends that the ALJ erred in determining his residual functional capacity. (Joint Stip.

at 16-18.)  Plaintiff challenges the ALJ's determination in three respects.  First, he argues that the ALJ's finding that he could stand and walk for no more than two hours in an eight-hour workday is inconsistent with treating doctor Markley's opinion that Plaintiff is unable to stand and walk for long periods of time due to his hip replacement and ankle surgery.  (Joint Stip. at 16.)  Second, he argues that the ALJ erred by not including his need to use a cane or walker.  (Joint Stip. at 16.)  And third, Plaintiff argues that the mental restrictions found by the ALJ are not based on any medical opinion.  (Joint Stip. at 17.)  For the following reasons, the Court rejects Plaintiff's first two arguments but accepts the third.

The governing regulations provide that the responsibility for deciding a claimant's residual functional capacity is reserved to the Agency.  20 C.F.R. § 404.927(e)(2).  Nevertheless, "a [residual functional capacity assessment] that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

As Plaintiff himself acknowledges, Dr. Markley did not specify the length of time he could stand; he merely indicated on a form completed on October 12, 2005, that Plaintiff was "unable to stand/walk [for] long periods."  (AR 180.)  By contrast, consultative orthopedist Juliane Tran determined after an examination on February 27, 2006, that Plaintiff could stand up to four hours a day, increasing to six hours a day when using an assistive device.  (AR 221.)  In his decision, the ALJ accepted Dr. Markley's walking limitation instead of Dr. Tran's, finding that Plaintiff could stand or walk no more than two hours a day, instead of up to four.  (AR 21.) Though the two-hour stand/walk limitation was not based expressly on

1  Dr. Markley's opinion, it was not inconsistent with it either, and
2  Plaintiff has not shown why it was unreasonable for the ALJ to
3  interpret Markley's opinion in that way.
4      As to Plaintiff's need for an assistive device, the ALJ
5  reasonably interpreted the treating and examining physicians' opinions
6  as setting forth the amount of time Plaintiff could stand or walk
7  unassisted by a cane or other device.  Indeed, Dr. Tran explicitly
8  based her stand/walk limitation on Plaintiff's use of a cane.  (AR
9  221.)  Though Dr. Markley did not mention the use of a cane in her
10 form evaluation, once again, Plaintiff has failed to show that the
11 ALJ's interpretation of her opinion was unreasonable.  *See Macri v.*
12 *Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (noting that "the ALJ is
13 entitled to draw inferences logically flowing from the evidence.")
14 (quotation omitted).
15     Finally, as to the ALJ's findings regarding Plaintiff's mental
16 limitations, the Court agrees that they are not supported by
17 substantial evidence in the record.  Dr. Musacco opined that
18 Plaintiff's "daily activities and social functioning are significantly
19 impaired" but "suspect[ed] that he is able to understand and carry out
20 simple tasks."  (AR 215.)  Dr. Musacco recommended that a payee be
21 authorized to ensure that Plaintiff's funds were adequately managed.
22 (AR 215.)  No other mental residual functional capacity determination
23 was carried out.
24     Because it is not clear what evidence the ALJ relied on to
25 determine that Plaintiff's mental impairment resulted in "mild to
26 moderate impairments in capacities to understand and remember
27 instructions, sustain concentration and persistence, socially interact
28 with the general public, and adapt to workplace changes," (AR 21), his

1 residual functional capacity determination is not substantially
2 supported in this respect.  On remand, the ALJ should reconsider the
3 limitations imposed by Plaintiff's mental impairment and set forth
4 what opinions he is relying on in reaching his conclusions.
5     For the reasons set forth above, the Agency's decision is
6 reversed and the case is remanded for further proceedings consistent
7 with this Opinion.
8     IT IS SO ORDERED.
9     DATED: November 9, 2009.

                                    _____
                                    PATRICK J. WALSH
                                    UNITED STATES MAGISTRATE JUDGE

28 S:\PJW\Cases-Soc Sec\MCGEE, B 5628\Memo_Opinion.wpd